This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**VALERIE MUÑIZ,**

    Petitioner-Appellee,

v.                                                     **NO. 28,902**

**EDWARD ESTRADA,**

    Respondent-Appellant,

v.

**STATE OF NEW MEXICO ex rel.**
**HUMAN SERVICES DEPARTMENT**,

    Intervenor-Appellee.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Raymond Z. Ortiz, District Judge**

Valerie Muñiz
Velarde, NM

Pro Se Appellee

Gary K. King, Attorney General
Anita X. Tellez, Special Assistant Attorney General
Matthew Wilson, Special Assistant Attorney General
Santa Fe, NM

for Appellee Human Services Department

Ray Twohig, P.C.
Ray Twohig
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

In this case, Father challenges the calculation of his child support obligation, which imputed income to him at $8.00 per hour based on a forty-hour work week during the time span beginning with his separation from Mother and ending with the date of the final hearing when the obligation was determined. Father's position is that income should not have been imputed for those periods during which he was incarcerated, or for those periods when he was unemployed. Having reviewed the evidence presented to the hearing officer, the objections made by Father to the district court, and the arguments made on appeal, we conclude that the district court did not abuse its discretion by imputing Father's income at $8.00 an hour for the entire time span. Accordingly, we affirm.

**I.     BACKGROUND**

Mother and Father had three children together. The couple separated in 2002, and Mother filed a petition for custody and child support in April 2004. After a series of delays, on March 25, 2008, a hearing was held in order to determine the parties' child support obligations. The hearing officer issued an amended report and decision

on April 18, 2008. The report noted that the parties stipulated to Mother's income for the entire time between the separation and the hearing and that the stipulation regarding Father's income related only to one brief period of employment during the same period, as well as his future employment. To account for Father's support obligation for the remainder of time between the separation and the hearing, the hearing officer found that Father's income should be imputed at a rate of $8.00 per hour based on a forty-hour week. The district court adopted the hearing officer's findings and decision. Father appeals.

## II.     DISCUSSION

Father makes two arguments on appeal. First, Father contends that the district court improperly imputed his income during the periods that he was incarcerated. Second, Father challenges the imputation of income for the periods during which he was unemployed, and he argues that the evidence did not support the $8.00 per hour rate of imputation. In addition, the parties dispute whether the hearing officer properly accounted for the lengths of time that Father was incarcerated. We review the district court's order setting child support for abuse of discretion and any factual findings for substantial evidence. *See Quintana v. Eddins*, 2002-NMCA-008, ¶ 9, 131 N.M. 435, 38 P.3d 203. We begin by considering the length of incarceration.

### A.     Length of Incarceration

Father asserts that the testimony at the hearing showed that he was incarcerated for at least "[three] years and eight months during the six[-]year period from the separation of the parties until the imputation of income." Mother responds that Father's testimony on this subject at the hearing was "tentative, unclear, and inconsistent" and that, as a result, the hearing officer relied on the submitted jail records in order to determine that the period of incarceration was approximately seven months. After reviewing the testimony and the hearing officer's report, we agree with neither party.

The hearing officer's report is divided into three sections. The report begins with a section entitled, "The Hearing Officer heard testimony, evidence, and argument," which is followed by an outline of the testimony and evidence received. Next, the hearing officer reported her factual findings under the heading "The Hearing Officer FINDS[.]" Last, the hearing officer made her recommendations to the district court in a section titled "The Hearing Officer Recommends that the Court Order[.]" Under the first section, outlining the testimony and evidence received, the hearing officer made the following observation:

> Father provided jail records to support his testimony of his times of incarceration[,] which are summarized as follows: Bernalillo Metro Detention Center from 07/03/2006 to 11/03/2006 when he was transported to Taos, Bernalillo Metro Detention Center from 12/13/2007 to 12/21/2007; Cibola County Detention Center from 12/23/2007 to 01/12/2008; and Taos Detention Center from 11/29/2007 to 01/14/2008.

Despite Father's assumption to the contrary, this was not a factual finding by the hearing officer regarding the length of his incarceration but rather an acknowledgment of the records that Father produced as evidence. Earlier in this first section of the report, the hearing officer refers to Father's incarceration and release in 2002. This reference is supported by Father's testimony at the hearing:

Hearing Officer: I'm going to ask you for your work history and your income, starting with 2002. Do you have any wage information for 2002?

Father: No ma'am. I was incarcerated. . . . 2002 would be until May.

Hearing Officer: Until May of 2002?

Father: Yes ma'am.

Hearing Officer: And she left in April of 2002?

Father: Correct.

Hearing Officer: So, what did you do after May of 2002?

Father: I looked for employment, and then in July I was back in custody.

Hearing Officer: For how long?

Father: It would be all the way until 2005.
Hearing Officer: What month in 2005?

Father: July.

The hearing officer made no factual finding with regard to the total length of Father's

5

incarceration. The finding relating to incarceration simply states that "the [h]earing [o]fficer finds that Father's responsibility to provide support and maintenance to his children did not toll during his periods of incarceration."

The hearing officer further found that Father owed arrears for the entire period between May 2002 and March 2008, which includes the disputed periods of incarceration, and that his income should be imputed for all of the periods that Father was either unemployed or incarcerated. Thus, although the hearing officer did not make a specific finding regarding the length of incarceration, the report acknowledges that Father was incarcerated in 2002 and imputes his income for the entire period of time that he contends that he was incarcerated. We presume, based on the references in the report, that the hearing officer was aware that the length of incarceration totaled a three-and-a-half-year period, and we take this as the basis for our further analysis. *See Doña Ana Mut. Domestic Water Consumers Ass'n v. New Mexico Pub. Regulation Comm'n*, 2006-NMSC-032, ¶ 32, 140 N.M. 6, 139 P.3d 166 (concluding that although an agency did not make a specific finding, that finding was implicit in the order and supported by the record). We turn now to consider whether Father's income was properly imputed for the time that he was incarcerated.

**B.	Imputing Income during Incarceration**

Father cites a number of out of state cases for the proposition that "incarceration

6

is one factor to consider" when evaluating the "ability of a parent to pay child support." In New Mexico, it is clear that "[w]hile incarceration is a factor to be considered, proof of incarceration standing alone does not demonstrate an inability to pay support." *Thomasson v. Johnson*, 120 N.M. 512, 514, 903 P.2d 254, 256 (Ct. App. 1995). Instead, we consider five factors to evaluate whether the amount of support is justified despite the parent's incarceration: (1) whether the criminal act was deliberate and had known consequences, (2) whether the period of incarceration, as well as the duration of the support obligation, were for a "relatively short period of time," (3) whether the parent had marketable skills, and (4) whether the parent had assets apart from income. *See id.* at 514-15, 903 P.2d at 256-57. We observe that *Thomasson* addressed the modification and not the imposition of child support. *Id.* at 513, 903 P.2d at 255. Nevertheless, both parties argue that the factors outlined in *Thomasson* should be applied to the present case, and we see no substantive reason to depart from that analysis.

Father points to nothing that would indicate that the hearing officer failed to consider the *Thomasson* factors or that she considered only the fact of incarceration. Nor does Father direct us to any place in the record where he requested reconsideration based on the hearing officer's failure to take the multi-factor approach outlined in *Thomasson*. We acknowledge that Father filed objections to the hearing

7

officer's report. Those objections, however, do not address Father's current argument and instead relate to the length of incarceration, his inability to find employment, the rate of imputation, and the award of child support for the period of time before Mother filed the petition. To the extent that Father's objection to the calculation of the length of his incarceration can be considered a reference to one of the *Thomasson* factors, we are unpersuaded that a total of three and a half years of incarceration—not served consecutively, but rather in discrete periods—demonstrates that Father could not meet his support obligation based on his incarceration. In *Thomasson*, this Court considered a four-year period of incarceration to be, in the context of imputing income, "a relatively short period of time." *Id.* at 515, 903 P.2d at 257.

It is well established that it was Father's burden to demonstrate that he was unable to meet his support obligation due to his incarceration. *See State ex rel. Human Servs. Dep't v. Kelley*, 2003-NMCA-050, ¶ 25, 133 N.M. 510, 64 P.3d 537 (acknowledging that the parent "has the burden of proving inability to pay"); *Thomasson*, 120 N.M. at 514, 903 P.2d at 256 (affirming because the district court could have determined that the parent failed to prove that "the continuation of the amount of support was unjustified despite his incarceration"). In his briefing to this Court, Father argues that the following facts satisfied that burden: "substantial" periods of incarceration, living at his mother's house, an inability to hold down a job,

dismissal from a job due to an argument, alcoholism, poor health, and a criminal record that prevents him from obtaining meaningful employment. The hearing officer was not persuaded by these facts, and we will not reweigh the evidence on appeal. *See Kaveny v. MDA Enters., Inc.*, 2005-NMCA-118, ¶ 6, 138 N.M. 432, 120 P.3d 854 ("It is for the fact-finder, not the appellate court, to weigh the evidence."); *Bd. of County Comm'rs of Sierra County v. Harrison*, 1998-NMCA-106, ¶ 8, 125 N.M. 495, 964 P.2d 56 (noting that an appellate court does not reweigh evidence and that the question is whether there was evidence to support the result reached by the hearing officer and not the opposite outcome).

We are further unpersuaded by Father's argument that because he "did not commit crimes in order to avoid a child support obligation," his income cannot be imputed for the period of incarceration. For support, Father cites *Quintana*. In *Quintana*, this Court considered whether a parent's income should be imputed based on underemployment and held that

> as long as a parent is working full time in his area of expertise, earning an amount of money within the range presented by the evidence, and in a location reasonably accessible to his child, the trial court may not find that he is underemployed without making a specific finding of bad faith.

2002-NMCA-008, ¶¶ 1-2. The Court then defined "good faith" in the context of underemployment as "acting for a purpose other than to reduce or avoid a child support obligation." *Id.* ¶ 17. In citing *Quintana*, Father fails to address the first half

of the Court's holding. He makes no effort to establish that he was working full time in his area of expertise or that he was earning an amount of money within the range presented by the evidence in a location accessible to his children. *See id.* ¶ 2. Accordingly, *Quintana*'s good faith definition does not apply to prevent imputation of income during Father's incarceration.

**C.      Imputation During Periods of Unemployment**

Father's second argument is that the district court improperly imputed income "for periods of unemployment where [his] criminal history has prevented him from obtaining meaningful employment despite substantial efforts to do so[.]" Father presents no argument or authority to support the proposition that a parent is excused from a child support obligation when he is unemployed because he has difficulty in securing a position. Father does not argue that he was unemployed in good faith, as contemplated by *Quintana*'s underemployment analysis. He simply states that his "alcoholism, health and criminal record have prevented him from meaningful employment during periods living outside jail or prison." These assertions are belied by the evidence presented on the record. *See Boutz v. Donaldson*, 1999-NMCA-131, ¶ 6, 128 N.M. 232, 991 P.2d 517 ("It is for the trial judge, or in this case the special master, subject to judicial review, to assess [a parent's] efforts, sincerity, conscientiousness, and credibility, and then to decide whether [the parent] has acted

in good faith to earn and preserve as much money to support [the] children as could reasonably be expected under the circumstances.").

The hearing officer heard evidence that Father had earned $8.00 per hour while he and Mother lived together, that he had earned $8.00 per hour at the only job he held while not incarcerated between May 2002 and March 2008, and that he had recently obtained a trucking license that would permit him to earn at least $8.00 per hour. Based on this evidence, we are satisfied that before, between, and after his incarcerations, Father was capable of finding employment at the rate of $8.00 per hour.

## III. CONCLUSION

For these reasons, the district court did not abuse its discretion by imputing Father's income during the periods of incarceration and unemployment, and the evidence supported imputing the income at a rate of $8.00 per hour. Consequently, we affirm the district court.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

11

_____
**LINDA M. VANZI, Judge**