This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**SIMON RODRIGUEZ and**
**JUAN M. RODRIGUEZ,**

Plaintiffs-Appellees,

v.                                                          **A-1-CA-36223**

**J.G. FORRESTER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler-Gray, District Judge**

Marrs Griebel Law, Ltd.
Clinton W. Marrs
Albuquerque, NM

for Appellees

Sutin, Thayer & Brown, P.C.
Frank C. Salazar
Jacqueline K. Kafka
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant appeals from the district court's denial of his motion to compel arbitration. We affirm in part and reverse in part.

**BACKGROUND**

**{2}** Defendant J.G. Forrester (Forrester) is the sole owner and managing partner of Black Gold Resources, Inc. (Black Gold), a Tennessee company incorporated in December 2013. Forrester serves as president, chief executive officer, director, and registered agent of Black Gold. Black Gold is the managing partner of Roaring Fork JV (Roaring Fork), a Tennessee general partnership created by Forrester in 2013 to drill wells for oil and gas in Kansas, Texas, and Oklahoma.

**{3}** In December 2014, Plaintiff Juan Rodriguez (Son) signed a subscription agreement (the Agreement) with Forrester to purchase a "Unit" in the Roaring Fork partnership. Plaintiff Simon Rodriguez (Father) transferred $60,000 to Son's checking account so that Son could fund the investment. Father was not a signatory to the Agreement, which contains an arbitration provision requiring "all controversies, disputes, or claims pertaining in any manner whatsoever [to] be resolved exclusively through binding arbitration."

**{4}** Plaintiffs commenced this action against Forrester and one of his employees[1] in January 2016 alleging, among other things, a violation of the New Mexico Uniform Securities Act and the New Mexico Unfair Practices Act. Pursuant to the

---

[1]The second named defendant has since been dismissed with prejudice from the case.

2

complaint, Plaintiffs "seek to recover $60,000 they lost because of [Forrester's] unlawful solicitation of their investment in the securities of Black Gold . . . and [Forrester's] unlawful sale of the securities to them."

{5}     Forrester moved to dismiss Plaintiffs' complaint for lack of personal jurisdiction or, in the alternative, to stay the proceedings and compel arbitration in accordance with the terms of the Agreement. With respect to the latter, Forrester argued that the Agreement's arbitration provision covered "all the claims brought by Plaintiff [sic]" and that the "proper defendants" in the action were not Forrester and his employee but rather "the entities that sold [Son] the Roaring Fork Unit and signed the Agreement: Black Gold and Roaring Fork." In sum, Plaintiffs' effort to avoid the arbitration clause by "attempting to hold [Forrester] personally liable for actions allegedly taken by the Black Gold entity" was "an impermissible tactic" that the district court should reject.

{6}     The district court denied Forrester's motion to compel arbitration on the basis that Father and Son "have chosen to sue individually J.G. Forrester" and that "they have not sued . . . Roaring Fork and Black Gold." The court certified its decision for interlocutory appeal, which we granted.

**DISCUSSION**

**I.     Standard of Review**

3

**{7}** As an initial matter, it was unnecessary for the district court to certify its order denying Forrester's motion to compel arbitration for interlocutory appeal. The New Mexico Uniform Arbitration Act, NMSA 1978, §§ 44-7A-1 to -32 (2001) states that, "[a]n appeal may be taken from . . . an order denying a motion to compel arbitration[.]" Section 44-7A-29(a)(1).

**{8}** We apply a de novo standard of review to a district court's denial of a motion to compel arbitration. *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 4, 134 N.M. 558, 80 P.3d 495. Similarly, whether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo. *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 51, 131 N.M. 772, 42 P.3d 1221.

**{9}** The right to directly appeal an order denying a motion to compel arbitration reflects New Mexico's strong preference for resolving disputes through arbitration where parties have, as a matter of contract, agreed to that form of dispute resolution. *See Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 16, 296 P.3d 478 (explaining that "there is strong public policy in this state in favor of resolution of disputes through arbitration" and that "[w]hen a party agrees to a non-judicial forum for dispute resolution, the party should be held to that agreement" (omission, internal quotation marks, and citations omitted)); *Christmas v. Cimarron Realty Co.*, 1982-NMSC-079, ¶ 7, 98 N.M. 330, 648 P.2d 788

4

("Arbitration is a contractual remedy for the settlement of disputes by extrajudicial means."). Much as parties cannot be forced to arbitrate when they have not contractually agreed to do so, *see Heye*, 2003-NMCA-138, ¶ 8 (explaining that "a legally enforceable contract is a prerequisite to arbitration [and that] without such a contract, parties will not be forced to arbitrate"), "when parties have agreed to arbitrate, the courts must compel arbitration." *Santa Fe Technologies, Inc.*, 2002-NMCA-030, ¶ 51.

**II.    The District Court Erred in Denying Forrester's Motion to Compel Arbitration as to Son**

{10}    The sole question before us is whether Forrester may compel Father and Son to arbitrate their claims. In the district court, Plaintiffs argued that the only two parties to the Agreement were Son and Roaring Fork and that there existed in the record "no contract of any kind, whether arbitration agreement or otherwise," between Plaintiffs and Forrester. The district court agreed with Plaintiffs and denied Forrester's motion to compel arbitration, reasoning that Plaintiffs had "chosen to sue individually J.G. Forrester" and that "they have not sued . . . Roaring Fork and Black Gold." We reverse the district court's ruling with respect to Son. As to Father, we agree that as a nonsignatory to the Agreement and on the record before us, Father cannot be compelled to arbitrate. We explain.

{11}    We begin by addressing the district court's treatment of Plaintiffs jointly notwithstanding that, as between the two, Son was the only signatory to the

5

Agreement. In *Monette v. Tinsley*, 1999-NMCA-040, ¶¶ 1, 6, 12, 126 N.M. 748, 975 P.2d 361, this Court addressed a similar situation where one plaintiff, Donald Monette, was a signatory to an agreement containing an arbitration provision that the defendants were attempting to enforce against Donald and his brother and co-plaintiff, Charles Monette, who was not a signatory to the agreement. We affirmed the district court's denial of the motion with respect to Charles, concluding that Charles was not a party to the contract and that the defendants had failed to show why Charles, a nonsignatory, should be bound to arbitrate in that case. *Id.* ¶¶ 9, 12. *Monette* thus illustrates that determinations regarding whether a plaintiff can be compelled to arbitrate must take into account whether the plaintiff is a signatory or nonsignatory to an agreement to arbitrate.

{12}    The record in this case reflects that the district court did not consider how each Plaintiff's relationship to the Agreement—i.e., Son's status as a signatory, and Father's status as a nonsignatory—separately affected whether or not he could be compelled to arbitrate his claims against Forrester. We thus proceed with separate analyses of whether Son, on the one hand, and Father, on the other, may be compelled to arbitrate.

**A.    Son is a Signatory to the Agreement and Must Arbitrate His Claims**

{13}    When faced with a motion to compel arbitration, a district court "is compelled to order the parties to arbitrate unless it finds that there is no

6

enforceable agreement to arbitrate." *Alexander v. Calton & Assocs., Inc.*, 2005-NMCA-034, ¶ 9, 137 N.M. 293, 110 P.3d 509. "Arbitration agreements are a species of contract, subject to the principles of New Mexico contract law." *L.D. Miller Constr., Inc. v. Kirschenbaum*, 2017-NMCA-030, ¶ 18, 392 P.3d 194. "Courts are to interpret the provisions of arbitration agreements by the rules of contract law and are to apply the plain meaning of the language utilized, in order to give effect to the agreements struck by the parties." *Horne*, 2013-NMSC-004, ¶ 16 (internal quotation marks and citation omitted).

{14}     The Agreement for the purchase of one unit in Roaring Fork was "entered into . . . between Black Gold . . ., as [m]anaging [v]enturer of the Roaring Fork . . ., and [Son.]" The signatories to the Agreement were "J.G. Forrester, President" on behalf of Black Gold, and Son. The purpose of the Agreement was to formalize a relationship between Son and Forrester's company, Black Gold, whereby Son gained a working interest in up to two wells being drilled in Kansas by Roaring Fork, the general partnership of which Forrester's company was the managing partner. Son's working interest of 1.75 percent had the potential to yield him a 1.3125 percent net revenue interest in each of the wells. The Agreement's broadly worded arbitration clause provided that:

> It is agreed that any and all controversies, disputes, or claims pertaining in any manner whatsoever to this Agreement or the purchase of Units in the Joint Venture shall be resolved exclusively by binding arbitration . . . . This agreement to arbitrate . . . shall be

7

broadly interpreted and covers all controversies, disputes, and claims arising out of or relating to a Unit purchase including, but not limited to[,] contract claims, tort claims, and statutory claims or any combination of claims.

By its plain language, the arbitration clause covers *all* types of claims—contract, tort, statutory, or other—that may have accrued both before and after the parties entered the Agreement, so long as such claims "pertain[] in any manner whatsoever" and/or "aris[e] out of or relat[e] to" not only the Agreement itself but also Son's purchase of the unit, i.e., what led to and resulted—or failed to result—from the purchase. Indeed, Son conceded in the hearing before the district court that "unquestionably, [Son] would be required to arbitrate [his] claims if he chose to bring claims against Roaring Fork."

{15}    Son contends, however, that he cannot be compelled to arbitrate his claims against Forrester because he sued Forrester in his individual capacity (i.e., J.G. Forrester) and not in his corporate capacity (i.e., J.G. Forrester, President). He argues that construing the Agreement to include Son's claims against Forrester "for his own, individual[] misconduct" would impermissibly "fashion a new agreement" between Son and Forrester that does not exist. We disagree.

{16}    It is well established that "[p]arties contracting to resolve disputes by arbitration are bound by their agreement." *Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 25, 302 P.3d 751 (internal quotation marks and citation omitted). It is also true that "[g]enerally, third parties who are not signatories to an arbitration

8

agreement are not bound by the agreement and are not subject to, and cannot compel, arbitration." *Horanburg v. Felter*, 2004-NMCA-121, ¶ 16, 136 N.M. 435, 99 P.3d 685. However, there are numerous exceptions to this rule, and even a party who is not a signatory to an arbitration agreement may, in certain circumstances, enforce an agreement to arbitrate or be compelled to arbitrate. *See Damon v. StrucSure Home Warranty, LLC*, 2014-NMCA-116, ¶¶ 11, 16, 338 P.3d 123 (identifying the "five theories for binding nonsignatories to arbitration agreements" that federal courts have recognized and concluding that one of the theories— equitable estoppel—applied to prevent the plaintiff in that case, a nonsignatory to the arbitration agreement, from avoiding arbitration (internal quotation marks and citation omitted)). Thus, when a district court is presented with a motion to compel arbitration and must determine whether an arbitration agreement is enforceable between the parties, the question of enforceability cannot be answered simply by comparing the case's caption to the agreement's signature lines to confirm identicality of the parties. Rather, the district court must determine whether the agreement may be enforced by the party seeking to compel arbitration against the party resisting arbitration despite the fact that one party—either the party seeking to compel or the party seeking to avoid arbitration—is not a signatory to the agreement. The question is ultimately one of intent: did the parties in the instant case intend to decide their claims through arbitration? *See Mitsubishi Motors Corp.*

9

*v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (explaining that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute" because "as with any other contract, the parties' intentions control").

{17} Here, Son agreed to arbitrate "any and all controversies, disputes, or claims pertaining in any manner whatsoever to this Agreement or the purchase of Units in the Joint Venture." Son's argument that he only agreed to arbitrate any claims he may have against Roaring Fork and that he cannot be compelled to arbitrate by anyone other than Roaring Fork is unavailing. We have no difficulty concluding that if Son had named Forrester in his corporate capacity (i.e., J.G. Forrester, President) as a defendant in the instant suit, Forrester would be able to compel arbitration of Son's claims based on his clear status as a signatory to the Agreement. The question, here, is simply whether Son may avoid the Agreement's arbitration provision by a stratagem of naming Forrester in his individual, rather than corporate, capacity in the complaint.

{18} In arguing that he has "stated claims against Mr. Forrester for his own personal statutory and tortious misconduct[,]" Son appears to either confuse or erroneously conflate suits against an individual corporate agent for personal liability and suits against a person in their personal, rather than corporate, capacity. Citing and devoting much discussion to cases such as *Kaveny v. MDA Enters., Inc.*,

2005-NMCA-118, 138 N.M. 432, 120 P.3d 854, *Stinson v. Berry*, 1997-NMCA-076, 123 N.M. 482, 943 P.2d 129, and *Kreischer v. Armijo*, 1994-NMCA-118, 118 N.M. 671, 884 P.2d 827, Son argues that "[i]t is axiomatic that if an agent of a business entity directs or actively participates in the commission of the entity's statutory or tortious violation, the individual agent can be held personally liable." He additionally argues that "[w]hen acting as an agent of a business enterprise, the individual actor is not free to violate his or her statutory or common law obligations" and that an individual may be held individually liable "even when the individual is acting within the scope of his or her corporate duties[.]" But the fact that corporate agents may be held personally liable for their own individual wrongdoing within the scope of their corporate duties says nothing about whether corporate agents may enforce an arbitration agreement to which they are signatories, despite that they have been named in their individual capacities in the plaintiff's complaint. Son's reliance upon the cited cases thus not only is misplaced but also evinces that his claims are, in actuality, against Forrester in his corporate, not individual, capacity.

{19}   In light of the breadth of the Agreement's arbitration provision and the fact that all of Son's claims against Forrester (1) pertain to, arise under, or relate to the

11

Agreement[2] or Son's Unit purchase, and (2) involve conduct relating to Forrester's behavior in his corporate, not personal, capacity, we conclude that to allow Son to avoid the Agreement would be to impermissibly eviscerate or nullify the underlying agreement into which Son entered. Thus, we reverse the district court's denial of Forrester's motion to compel arbitration with respect to Son.

## B. Father Was Not a Party to the Agreement and Is Not Compelled to Arbitrate His Claims

{20} Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Clay v N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 14, 288 P.3d 888 (internal quotation marks and citation omitted). Thus, for the same reason a district court must order parties to arbitrate where it concludes that an enforceable agreement to arbitrate exists, "if the court finds that there is no enforceable agreement, it may not order the parties to arbitrate." *Alexander*, 2005-NMCA-034, ¶ 9 (alterations, omission, internal quotation marks, and citation omitted); *see* § 44-7A-8(c).

{21} It is undisputed that Father is a nonsignatory to the Agreement. Unlike Son, Father never agreed to arbitrate any claims he might have related to Son's Unit purchase and the Agreement, regardless of against whom those claims were brought. On the record before us, it seems Father's only role in this matter was to

---

[2]Indeed, we find puzzling Son's attempt to repudiate the Agreement at the same time he is suing Forrester to recover under the Agreement based on Forrester's alleged breach of the Agreement.

12

lend Son the money by which Son acquired the one-unit interest. We state no opinion regarding the viability of Father's claims against Forrester and note only that Forrester makes no argument that any exception for binding a nonsignatory applies to Father. Indeed, Forrester's position in the district court was that "[t]here is no factual or legal basis for [Father's] claims[,]" i.e., by attacking the merits of Father's claims, not whether they are arbitrable. Because Forrester fails to identify any basis upon which Father, an undisputed nonsignatory to the Agreement, may be bound by the Agreement, we affirm that portion of the district court's ruling denying Forrester's motion to compel arbitration as against Father.

**CONCLUSION**

{22}    For the foregoing reasons, we affirm the district court's denial of Forrester's motion with respect to Father, reverse with respect to Son, and remand for further proceedings in accordance with this opinion.

{23}    **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**LINDA M. VANZI, Chief Judge**


_____

13

**DANIEL J. GALLEGOS, Judge Pro Tempore**