1997-NMCA-076

943 P.2d 129

**Anthony Wayne STINSON, Jr., and Joleta Gallozzi, Co–Personal Representatives of the Estate of Anthony Wayne Stinson, Deceased, Plaintiffs–Appellants,**

v.

**John O. BERRY, and H.C. Berry, Defendants–Appellees,**

and

**Yucca Feeds, Inc., Defendant.**

No. 17434.

Court of Appeals of New Mexico.

June 17, 1997.

Certiorari Granted Aug. 7, 1997.

Tandy Hunt, P.C., Roswell, for Plaintiffs–Appellants.

Lee M. Rogers, Barbara A. Reddy, Atwood, Malone, Turner & Sabin, P.A., Roswell, for Defendants–Appellees.

## OPINION

APODACA, Judge.

1. On the Court's own motion, the original opinion filed May 1, 1997, is withdrawn and the following opinion is substituted in its place.

2. Plaintiffs, personal representatives of the estate of decedent (Decedent), appeal the trial court's order granting summary judgment to Defendants John O. Berry (John) and H.C. Berry (H.C.) and the dismissal of Plaintiffs' complaint against these two Defendants. The complaint alleged Defendants' negligence caused the wrongful death of Decedent, who died in an explosion. The complaint was against Defendant Yucca Feeds, Inc., a corporation; John, the president and manager of the corporation; and H.C., the owner of the property on which the explosion occurred. The complaint against Yucca Feeds was not dismissed, and the corporation is not a party to this appeal. We affirm the summary judgment in favor of H.C. and reverse the summary judgment in favor of John.

## I. FACTUAL AND PROCEDURAL BACKGROUND

3. Decedent was fatally injured when a used fuel storage tank on which he was welding exploded. The explosion occurred on property owned by H.C. The property was used for several purposes relating to the Berry family enterprises and was the business location of Yucca Feeds, Inc., a corporation whose president and vice-president were John and H.C. respectively. John was also the managing officer of Yucca Feeds, having direct control of the day-to-day operations of the corporation. Yucca Feeds was in the business of purchasing and reselling liquid cattle feed. As part of that business, the corporation provided storage tanks for the feed to its customers. Most of those storage tanks were converted from used fuel storage tanks that Yucca Feeds purchased and converted for such use.

4. The procedure for this conversion was developed by John several years before the accident. That procedure consisted of the tanks being steam-cleaned to remove the fuel residue, after which they would be cut and welded for use as a feed storage tank. John would have a person with a portable steamer spray steam into the tank for a period of thirty minutes per one thousand gallons of tank capacity. He would then test the tank by passing a lighted welding torch or flame through the exit steam. If there was no flare, John considered the tank safe for welding. He had used this procedure himself a number of times and considered it safe. This was the procedure that he had advised Decedent to use.

5. On the day of the accident, John was out of town, but he had left instructions for an employee of Yucca Feeds to telephone Leroy Regalado, the person who normally did the steam cleaning. Decedent was called to do the welding. After Mr. Regalado finished the steaming, Decedent began welding. An explosion occurred, and Decedent was killed. No one knew whether the "flame test" had been done. Mr. Regalado did not do it; he never did. He testified that he simply used the steam rod on the tank as John had previously instructed him. John testified that he himself did not test the tank because of his absence from the business that day.

6. Plaintiffs' complaint alleged that Yucca Feeds failed to provide a safe work place for Decedent, that John had a duty to warn Decedent of the hazardous nature of the work and to ensure that the tank was safe for cutting, and that H.C., as the owner of the property, had a duty to provide premises free from inherently hazardous activity. John and H.C. moved for summary judgment on the basis that neither of them individually owed a duty to Decedent. The trial court agreed and granted the motions.

## II. DISCUSSION

### A. Strict Liability

7. Plaintiffs argue that the trial court erred in not ruling that Defendants had a non-delegable duty of care because of the hazardous nature of the activity. *See Saiz v. Belen Sch. Dist.,* 113 N.M. 387, 394–95, 827 P.2d 102, 109–10 (1992). Defendants respond that Plaintiffs did not plead strict liability as a basis for relief and, therefore, reversal of the summary judgment cannot be based on that theory. The record is clear that negligence was the theory of the claims in the complaint. However, in countering Defendants' motions for summary judgment in the trial court, Plaintiffs argued strict

liability, both in briefs and at the hearing on the motions. Shortly after the summary judgment motions were argued, Plaintiffs filed a motion to amend their complaint to include an allegation of strict liability. The motion was never ruled on. Instead, the trial court filed a decision and order granting summary judgment to the two individual Defendants on the basis of lack of duty to Decedent. In its decision, the trial court did not address strict liability.

■ 8. Although the trial court apparently did not rule expressly on Plaintiffs' motion to amend the complaint, we deem the motion to have been implicitly denied and therefore address the propriety of the denial. Where there has been no formal expression concerning a motion, a ruling can be implied by entry of final judgment or by entry of an order inconsistent with the granting of the relief sought. *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir. Unit A July 1981); *cf. In re Lower Valley Water & Sanitation Dist.,* 96 N.M. 532, 535, 632 P.2d 1170, 1173 (1981). Thus, here, where the individual Defendants have been dismissed from the case and final judgment as to them has been entered, we can assume that the motion to amend the complaint to allege a different basis for liability was denied. We note, however, that the better practice is for the trial court to actually rule on the motion before granting summary judgment. *See Ellison v. Ford Motor Co.,* 847 F.2d 297, 301 (6th Cir.1988).

■ 9. Amendments to pleadings are favored and should be allowed when justice so requires. We will reverse the denial of a motion to amend, however, only upon a showing of clear abuse of discretion. *Slide–A–Ride v. Citizens Bank of Las Cruces,* 105 N.M. 433, 436, 733 P.2d 1316, 1319 (1987). Plaintiffs have made no such showing here. Although generally the courts will not pass on the sufficiency of an amended complaint, our Supreme Court has stated that, if the insufficiency or futility of the pleading is apparent on its face, then granting the motion would serve no purpose. *See State v. Electric City Supply Co.,* 74 N.M. 295, 299, 393 P.2d 325, 328 (1964). Based on our discussion that follows, it appears from the record and the facts in this case that the proposed amendment would be futile. Under the amendment, Plaintiffs sought to impose a duty on the individual Defendants based on strict liability for inherently dangerous activities.

10. Plaintiffs' arguments fail for two reasons. First, as the authorities cited by Plaintiffs point out, New Mexico cases have previously applied strict liability only against owners or occupiers of land who were also employers of independent contractors and only in favor of third parties. *See Seal v. Carlsbad Indep. Sch. Dist.,* 116 N.M. 101, 103–05, 860 P.2d 743, 745–47 (1993); *Saiz,* 113 N.M. at 393–95, 827 P.2d at 108–10. Plaintiffs have never contended that Defendants John or H.C. were, as individuals, Decedent's employers. Plaintiffs cite no authority extending the doctrine of strict liability to such individuals. We will thus assume that Plaintiffs were unable to find such authority. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Issues raised in briefs that are unsupported by cited authority will not be reviewed by us on appeal. *Id.*

11. Second, even if Plaintiffs had found authority extending strict liability, their argument would nevertheless fail. The theory of strict liability is to prevent the employer of an independent contractor from shirking responsibility for injuries to *a third party* caused by the hazardous activities of the independent contractor. *See New Mexico Elec. Serv. Co. v. Montanez,* 89 N.M. 278, 281, 551 P.2d 634, 637 (1976). Our courts, however, have refused to impose strict liability on the employer of an independent contractor for injuries to the independent contractor or his employees who perform inherently dangerous work. As a matter of law, Decedent was an independent contractor and not a third party to whom a duty under the doctrine of inherently dangerous activities was owed by either H.C. or John. Because no duty was owed, Plaintiffs' complaint must fail as a matter of law. Consequently, in light of the fact that Plaintiffs' amended complaint could not withstand a motion to dismiss, the amendment would have been futile. We thus hold that the

trial court did not abuse its discretion in refusing to allow the amendment.

## B. H.C. Berry's Liability

12. Plaintiffs based H.C.'s liability for the wrongful death on his duty as the owner of the property on which the explosion occurred. Relying on *Seal,* Plaintiffs claim that a landowner has a duty to keep his property free from inherently dangerous conditions. They argue that, because H.C. knew what was taking place on his property and did not assert control over the property and prevent the activity, he should be liable. We disagree.

13. To hold a property owner liable to an employee of an independent contractor,

> [p]laintiff must also show that his injury was proximately caused by the owner's failure to exercise that control in a reasonable manner, that the owner knew or by the exercise of reasonable care should have discovered the dangerous condition, that such hazard involved an unreasonable risk of harm to plaintiff, and the landowner should have expected that the employee would not discover or realize the danger.

*Requarth v. Brophy,* 111 N.M. 51, 54–55, 801 P.2d 121, 124–25 (Ct.App.1990). H.C.'s duty to provide a safe workplace for employees of a subcontractor depends on the degree of control he exercised over the premises and the details of the work being performed. *Pollard v. Westinghouse Elec. Corp.,* 119 N.M. 783, 785, 895 P.2d 683, 685 (Ct.App. 1995). Here, the trial court determined that H.C. owed no duty to Decedent because he did not retain control of the work premises or of the manner in which the work was performed. Although we believe that the degree of control is generally a factual determination, here the uncontested facts showed that H.C. exercised no control at all over the business of Yucca Feeds or its use of the premises.

14. H.C. testified that he owned the property used by Yucca Feeds. He also had some ownership interest in the company. However, he did not maintain any control over the operation of the company. Although he knew that Yucca Feeds was converting used fuel tanks into feed tanks, he did not participate in, supervise, or direst the conversion of the tanks. He did not control the day-to-day operations of the company. There was no evidence raising a material issue of fact regarding H.C.'s control. All of the uncontested facts established that he had no control over the business of Yucca Feeds. Where there was no evidence that H.C. had any right of control over how Yucca Feeds used the premises or how Yucca Feeds conducted its business, summary judgment was proper. *See Requarth,* 111 N.M. at 55–56, 801 P.2d at 125–26.

15. Insofar as Plaintiffs argue that H.C. could be liable as an officer of Yucca Feeds, there was no evidence of individual participation in the tortious conduct by H.C. Thus, H.C. would not be liable individually on the basis that we determine John could be so held liable in our discussion below.

## C. John Berry's Liability

16. The trial court granted summary judgment in favor of John on the basis that he was acting at all times within the scope of his corporate duties. Plaintiffs argue that the fact that John was acting within the scope of his corporate duties does not protect him from liability. We agree.

17. It is a basic tenet of corporate law that a corporation is a legal entity, separate from its shareholders, directors, and officers. *Eastern Navajo Indus., Inc. v. Bureau of Revenue,* 89 N.M. 369, 373, 552 P.2d 805, 809 (Ct.App.1976). Thus, the shareholders, directors and officers are not personally liable for the acts and obligations of the corporation. Corporate directors cannot be held vicariously liable for the corporation's torts merely by virtue of the office they hold. *Taylor v. Alston,* 79 N.M. 643, 644, 447 P.2d 523, 524 (Ct.App.1968). However, if an officer or director directs or actively participates in the commission of the tortious act of the corporation, he will be liable, along with the corporation. *Id.* Thus, if the officer or director directed, controlled, approved or ratified the activity that led to the injury, he or she can be held personally liable. *See Lobato v. Pay Less Drug Stores, Inc.,* 261 F.2d

406, 408–09 (10th Cir.1958) (stating the general rule on corporate director liability in a New Mexico case).

18. Directors are liable to third persons injured by their own tortious conduct regardless of whether they acted on behalf of the corporation and regardless of whether the corporation is also liable. 3A James Solheim & Kenneth Elkins, *Fletcher Cyclopedia of the Law of Private Corporations* §§ 1135–1137 (perm. ed. rev. ed. 1994); 18B Am.Jur.2d *Corporations* § 1877 (1985). This rule has its roots in the law of agency. Directors are the agents of their corporate principal, and the rule is that agents are liable for their own tortious acts, regardless of whether the principal is liable. Restatement (Second) of Agency §§ 343–351 (1958); *see Kreischer v. Armijo,* 118 N.M. 671, 673, 884 P.2d 827, 829 (Ct.App.1994). Thus, if corporate directors engage in tortious conduct, even though acting within the scope of their corporate duties, they can be personally liable for the injuries suffered as a result of that conduct. *See Smith v. Isaacs,* 777 S.W.2d 912, 914 (Ky.1989). "Director status therefore neither immunizes a person from individual liability nor subjects him or her to vicarious liability." *Frances T. v. Village Green Owners Ass'n,* 42 Cal.3d 490, 229 Cal. Rptr. 456, 464, 723 P.2d 573, 581 (1986).

19. We recognize that our Supreme Court held in *Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. 434, 872 P.2d 852 (1994), that two individual defendants who were acting within the scope and course of their employment with the corporation could not be liable for a claim of retaliatory discharge. *Id.* at 437, 872 P.2d at 855. We believe that case is distinguishable on the basis that the tort of retaliatory discharge is based on an employer-employee relationship, which is non-existent in this appeal. The employer in *Bourgeous* was the corporation, and *Bourgeous* essentially held that only the corporation, as employer, could be liable for a wrongful termination. In *Bourgeous,* the individual employees who sought the plaintiff's resignation were acting solely upon the direction of the corporation and were not the plaintiff's employers. Thus, although the case appears to hold that individuals acting within the scope and course of their employment for a corporation cannot be held individually liable in tort, we believe our Supreme Court intended such holding to be limited to the particular facts of that case, where the nature of the claim resulted from the employment relationship.

20. We hold that an officer or director of a corporation acting within the scope of his corporate duties may be personally liable for a tort injuring a third party, so long as the director or officer has a duty to that third party. Consequently, we conclude that the trial court erred in determining that John was immune from suit because he was acting within the scope of his duties to the corporation. We remand, however, for the trial court to determine whether, under the facts of this case, John had a duty to Decedent that would make him individually liable. We believe there are two ways in which the duty of a corporate officer to a third person can arise: (1) the agency relationship that the officer holds with the corporation or (2) such officer's individual duty to exercise reasonable care toward a third person.

**1. Agent's Duty To The Corporation**

21. Generally, an officer will not be held liable to a third person for negligence amounting merely to a breach of duty the officer owes to the corporation. *United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.,* 1 Cal.3d 586, 83 Cal.Rptr. 418, 423, 463 P.2d 770, 775 (1970). If physical harm results from reliance by a third party upon performance of the corporate duties by the officer or director, however, the officer or director will be liable to the third person injured. Restatement, *supra,* § 351. Consequently, if an officer is delegated and undertakes the corporation's duty of care and a third person relies on that undertaking and is personally injured by the breach of that duty, the officer will be personally liable. *See Frances T.,* 229 Cal.Rptr. at 468 & n. 19, 723 P.2d at 585 & n. 19; *Miller v. Muscarelle,* 67 N.J.Super. 305, 170 A.2d 437, 452 (App.Div.1961); *Bowes v. Cincinnati Riverfront Coliseum, Inc.,* 12 Ohio App.3d 12, 465 N.E.2d 904, 910–12 (1983).

[O]ne who has the general management and supervision of the affairs of a manufacturing company and who, while managing and supervising its affairs, assumes to direct and order an employee as to the manner in which a machine shall be operated, owes to such employee the duty of exercising ordinary care to give proper directions and orders regarding operation[.]

*Hoeverman v. Feldman*, 220 Wis. 557, 265 N.W. 580, 582 (1936).

22. In summary, the questions to be answered are: (1) what duties did John owe to the corporation; (2) did Decedent rely on John properly performing those duties; and (3) did John fail to perform his duties with reasonable care, resulting in physical injury to Decedent? John thus could be personally liable to Decedent if he failed to adequately perform his duties to the corporation and Decedent had relied on John's performance of those duties. *See Peters v. Frey*, 429 S.W.2d 847, 849 (Ky.Ct.App.1968) (defendant was personally in charge of the corporation's trucks; he failed to see that truck involved in accident was in good working order and, as a proximate result of that failure, an injury occurred: defendant was personally liable for the injuries); *see also* Restatement, *supra*, §§ 353–357. Plaintiffs appear to claim that John had assumed Yucca Feed's duty to Decedent to ensure that the fuel tank was safe for cutting with an acetylene torch. Thus, John could be liable to Decedent for failing to use reasonable care in the method devised and relayed to Decedent for the conversion of the used fuel tanks.

### 2. Individual Duty To A Third Person

23. A corporate officer, like every other individual, has duties not to engage in conduct that creates an unreasonable risk of harm to another. NMRA 1997, 13–1604; *C & H Constr. & Paving Co. v. Citizens Bank*, 93 N.M. 150, 157, 597 P.2d 1190, 1197 (Ct. App.1979). Thus, for example, if John had been driving a corporate vehicle on corporate business and been involved in an accident in which Decedent was injured, he would be liable for his own negligence in driving simply because he had a duty to drive with reasonable care. The duty of the driver arises irrespective of the driver's employment by the corporation. Everyone driving a vehicle on the highway owes to other drivers, passengers, and pedestrians a duty to exercise due care. John, as an individual, may have owed Decedent such a duty under the circumstances of this case.

### III. CONCLUSION

24. Because we conclude that the proposed amendment to the complaint would have been futile, we hold that the trial court did not abuse its discretion in implicitly denying the motion. We also hold that the trial court was correct in determining that H.C., as owner of the premises, had no duty to Decedent for inherently dangerous conditions or activities on the premises. Summary judgment was thus properly granted in favor of H.C. We hold, however, that the trial court erred in granting summary judgment in favor of John on the basis that his actions were within the scope of his corporate duties, which immunized him from liability. On remand, the trial court should determine whether John owed a duty of reasonable care to Decedent arising from either an individual duty to refrain from conduct creating an unreasonable risk of harm to another or his duty to the corporation to perform his corporate duties without causing personal injury to a third party. The summary judgment in favor of John is reversed and remanded for further proceedings consistent with this opinion.

25. **IT IS SO ORDERED.**

HARTZ, C.J., and WECHSLER, J., concur.