This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38658**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**LAVEL JAMES FOLKS,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM
Victor E. Sanchez, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}** Defendant Lavel Folks appeals from a jury verdict convicting him of a number of violent offenses, including criminal sexual penetration, aggravated battery against a household member, and aggravated burglary. We affirm.

**DISCUSSION**

**{2}**     Defendant's convictions stem from two separate incidents. The first occurred on February 17, 2018. On that date, Defendant physically and sexually assaulted his girlfriend of three years, D.B. (Victim), at her apartment. Immediately after the incident, Victim sent a text message to her friend, Gina Taylor, asking Taylor for help. The text stated in relevant part that Defendant "put his hand on me for an hour straight he raped me and everything[.]" The second incident occurred six weeks later when Defendant returned to Victim's apartment, broke in through a window, and physically assaulted her again. Taylor was present at the time and witnessed the assault.

**{3}**     Defendant raises a constellation of procedural and evidentiary issues for our review. Defendant's primary arguments center on Gina Taylor. Defendant argues that the district court should have excluded Taylor as a witness due to the State's inability to produce her for pretrial interviews until the first day of trial. Defendant further argues that the district court violated his due process rights by denying his request to obtain Taylor's mental health records for the purposes of impeachment. Relatedly, Defendant argues that the district court erred by refusing to grant a continuance on the morning of trial so that he could obtain an expert witness to impeach Taylor's credibility. Next, Defendant contends that the district court erred in admitting the text message that Victim sent Taylor on the night of the first assault while Taylor was on the stand because the State had not established the foundation necessary to invoke hearsay exceptions. Finally, Defendant asserts that the district court failed to follow proper procedures after defense counsel raised Defendant's competency on the second day of trial. We address each issue in turn.

## I.     Motion to Exclude Taylor as a Witness

**{4}**     There were significant difficulties in obtaining Taylor's appearance at scheduled pretrial interviews. The State scheduled four pretrial interviews, but Taylor failed to appear at any of the scheduled times. After the fourth unsuccessful attempt, Defendant filed a motion to exclude Taylor as a trial witness. The district court never made an explicit ruling on Defendant's motion, but issued a material witness warrant for Taylor three days before trial and allowed the State to call her as a witness.

**{5}**     Defendant argues on appeal that the district court abused its discretion in failing to rule on the motion to exclude Taylor. However, although the district court never made a formal ruling, the court implicitly denied Defendant's motion by allowing the State to call Taylor as a witness. *See Stinson v. Berry*, 1997-NMCA-076, ¶ 8, 123 N.M. 482, 943 P.2d 129 ("Where there has been no formal expression concerning a motion, a ruling can be implied . . . by entry of an order inconsistent with the granting of the relief sought.").

**{6}**     Defendant also suggests that the district court abused its discretion by failing to evaluate the *Harper* factors and to explain its ruling on the record. However, the need to engage in a *Harper* analysis is predicated on the district court finding that the State violated its discovery obligations. *See State v. Lewis*, 2018-NMCA-019, ¶ 6, 413 P.3d 484 (stating that the district court has "broad discretionary authority to consider what

sanction to impose *when a discovery order is violated*" (emphasis added)). Defendant has not established that a violation occurred in this case.

{7}     The State was diligent in trying to obtain Taylor's interview before the November 26, 2018, witness interview deadline in the pretrial order. After the third failed attempt and nearly a month before the interview deadline, the State sought a material witness warrant pursuant to Rule 5-404 NMRA so that Taylor could be interviewed. At a motion hearing on November 20, 2018, Defendant opposed the State's request. The district court denied the State's motion but gave the State ten days to serve Taylor with another subpoena—thus extending the deadline for Taylor's witness interview past the November 26 deadline in the pretrial order—and said that if she continued to avoid participating, the court would reconsider the State's request for a material witness warrant. When the prosecutor noted the impending pretrial interview deadline, the court stated, "For this particular witness, I'm not going to enforce the PTI deadline if you make the attempts to get her [served] within the next ten days." There is no dispute that the State served Taylor within this time frame but again, Taylor did not appear. The State quickly renewed its request for a material witness warrant for Taylor on December 12, 2018, and over Defendant's continued opposition, secured the warrant three days before trial.

{8}     Under the circumstances, it is not apparent that the State failed to comply with the time limits imposed by the scheduling order or the district court's rulings bearing on those deadlines. We note as well that Defendant has not made any argument on appeal as to how the State failed to comply with the scheduling order, nor does he address the substance or merit of his motion to exclude—his argument is limited to the lack of an express ruling. Given the State's continuous efforts to secure Taylor's interview, the circumstances of this case do not demonstrate that the district court abused its discretion in denying Defendant's motion to exclude Taylor.

## II.     Motion for Continuance

{9}     Defendant next argues that the district court erred in denying his motion for a continuance on the first day of trial. Defendant raised this motion after conducting a pretrial interview with Taylor immediately before the trial started and learning that she had a history of schizophrenia. Defendant asserts that the continuance should have been granted so that he could obtain Taylor's mental health records and an expert witness in order to impeach Taylor's credibility. In response, the State contends that Defendant failed to provide a reasonable basis for obtaining Taylor's medical records and that the district court did not abuse its discretion in denying Defendant's request for a continuance.

{10}    Before turning to our evaluation of Defendant's motion for a continuance, we first address Defendant's predicate argument that he was entitled to obtain Taylor's mental health records in order to impeach her testimony. While it is unclear from the record that Defendant made a request for the witness's mental health records separate and apart from his request for a continuance, we nevertheless conclude that the district court did

not abuse its discretion in ruling that Defendant was not entitled to those records. *See State v. Luna*, 1996-NMCA-071, ¶ 9, 122 N.M. 143, 921 P.2d 950.

**{11}** Defendant cites *United States v. Robinson*, 583 F.3d 1265, 1270 (10th Cir. 2009), for the proposition that criminal defendants are entitled to in camera review of a witness's mental health records for impeachment purposes. We decline to apply *Robinson* because that case is factually distinct from the circumstances presented here. In *Robinson*, the defendant sought in camera review of a confidential informant's mental health records because the informant was involuntarily hospitalized for serious psychiatric illness and substance abuse just six days before trial. *Id.* at 1272. These severe and particular circumstances raised immediate doubts about the informant's capacity to testify, necessitating an in camera review of the witness's medical records to determine whether his testimony met the threshold level of admissibility. *Id.* at 1273-74. The court in *Robinson* emphasized that the informant was the only witness who testified directly to the defendant's possession of a firearm, and the only witness who had interacted with and identified the defendant. Accordingly, "his testimony was central— indeed essential—to the government's case" and his credibility was of "paramount concern." *Id.* at 1271. In this case, Taylor's testimony served to corroborate Victim's account of Defendant's attacks, and Defendant has not made any similar showing that Taylor's capacity to testify was impaired.

**{12}** Under longstanding New Mexico law, a defendant must make a threshold showing that he reasonably expects the requested psychological records will provide information material to the defense in order to justify in camera review. *See Luna*, 1996-NMCA-071, ¶ 9. This Court has held that a mere assertion that inspection of the records is necessary for a possible attack on a witness's credibility is insufficient to meet this showing. *Id.* Here, defense counsel asserted that Taylor "is currently diagnosed with schizophrenia and is not being treated for that [inaudible]. In addition, there are admissions to prior hospitalizations and prior drug use." Defendant argued, without elaboration, that these facts call into question Taylor's memory and ability to perceive. However, Defendant made no showing that Taylor's capacity to remember or perceive was impaired. Indeed, when discussing Taylor's pretrial interview, Defendant did not contest that Taylor had no issues recalling the events to which she would testify. We conclude that Defendant did not meet his burden to make a threshold showing that Taylor's records were subject to review by the district court, and thus, the district court did not abuse its discretion in denying Defendant's request to obtain Taylor's mental health records.

**{13}** We turn now to Defendant's argument that a continuance was necessary so that he could retain an expert witness to impeach Taylor's capacity for memory. We review the grant or denial of a motion for continuance for an abuse of discretion. *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. In determining whether the district court abused its discretion, *Torres* instructs us to evaluate seven factors:

> [(1)] the length of the requested delay, [(2)] the likelihood that a delay would accomplish the movant's objectives, [(3)] the existence of previous

continuances in the same matter, [(4)] the degree of inconvenience to the parties and the court, [(5)] the legitimacy of the motives in requesting the delay, [(6)] the fault of the movant in causing a need for the delay, and [(7)] the prejudice to the movant in denying the motion.

*Id.* Applying these factors here, we hold that the district court did not abuse its discretion in denying Defendant's motion.

**{14}** The first three factors weigh neutrally or slightly in Defendant's favor. Defendant did not request a particular length of time for the continuance, and because we have no indication of how much time would be needed, the first factor has little or no application here. *Compare id.* ¶ 15 (holding that a requested delay of a week or less to properly serve a witness and compel the witness to testify weighed in favor of granting a continuance), *with State v. Salazar*, 2006-NMCA-066, ¶¶ 24, 26-27, 139 N.M. 603, 136 P.3d 1013 (holding that the denial of a continuance was appropriate where the delay was likely at least two months). *See also State v. Salazar*, 2007-NMSC-004, ¶ 21, 141 N.M. 148, 152 P.3d 135 ("[The d]efendant did not request a specific amount of time for delay, but presumably enough time to conduct further witness interviews, possibly have the [v]ictim evaluated to determine competency to testify, and time to investigate."). As for the second factor, a sufficient delay may have allowed Defendant to obtain an expert. And under the third factor, there were no prior continuances in the case.

**{15}** However, the fourth *Torres* factor—the degree of inconvenience to the parties and the court—weighs heavily against Defendant here. Defendant made his motion for continuance on the first day of trial, and we presume that delaying a trial on the day it is set to begin inconveniences both the parties and the court. *State v. Gonzales*, 2017-NMCA-080, ¶ 36, 406 P.3d 534; *see also State v. Aragon*, 1997-NMCA-087, ¶ 22, 123 N.M. 803, 945 P.2d 1021 ("[A]s a general rule, a motion for a continuance filed at the last minute is not favored."). Relying on our Supreme Court's evaluation of the fourth factor in *Torres*, Defendant argues that the State has not shown that delaying trial would have resulted in inconvenience. However, this argument misunderstands the reasoning in *Torres*. In that case, the defendant sought a continuance in order to obtain the appearance of a witness essential to the defense's case. *Torres*, 1999-NMSC-010, ¶¶ 11-12. The district court was required to balance the defendant's due process rights with the court's interest in efficient administration of its docket. *Id.* ¶ 10. Our Supreme Court held that the district court erred in that case by prioritizing its concerns about expediency over the defendant's right to compulsory process. *Id.* ¶ 17. Here, Defendant has not made an analogous showing that that a mental health expert was essential to his defense theory and has not established that obtaining an expert witness implicated his right to compulsory process.

**{16}** Next, we see no indication that Defendant requested the continuance in bad faith—the fifth *Torres* factor. Yet, the sixth factor—whether Defendant bore responsibility for the delay—is less clear. While Defendant correctly argues that he was not responsible for Taylor's refusal to appear for pretrial interviews, we also note that Defendant continuously opposed the State's efforts to secure Taylor's interview via a

material witness warrant in the months leading up to trial. Accordingly, we decline to weigh this factor in Defendant's favor.

**{17}** Finally, Defendant has not established that the district court's denial of the continuance prejudiced him. *See State v. Salazar*, 2007-NMSC-004, ¶ 16, 141 N.M. 148, 152 P.3d 135. Defendant argues that he was deprived of a potential avenue of defense because he was not allowed to retain an expert to impeach Taylor's assertion that her medical condition did not affect her memory. However, Defendant was not deprived of his ability to challenge Taylor's credibility on this matter. The district court permitted Defendant to cross-examine Taylor about her mental health history over the State's objection, and Taylor admitted during cross-examination that she had a history of schizophrenia and poor medication compliance.

**{18}** Likewise, Defendant has not made a plausible showing that the evidence he sought was material and favorable to his defense. *Id.* Defendant's argument that expert testimony was necessary to properly impeach Taylor's capacity is entirely speculative and unsupported by any showing that an expert witness would have given substantially favorable testimony that Taylor was unable to accurately perceive or remember the events that she had witnessed. *See State v. Anderson*, 2021-NMCA-031, ¶ 36, 493 P.3d 434 ("We do not ask whether the evidence was critical, but, instead, whether the defendant made a plausible showing of the testimony would have been both material and favorable to his defense." (alteration, internal quotation, and citation omitted)). Accordingly, having weighed the *Torres* factors, we perceive no abuse of discretion in the district court's ruling on Defendant's motion for a continuance.

### III.    Admission of Victim's Text Message

**{19}** On the first day of trial and over Defendant's objection, the district court admitted a text message that Victim sent to Taylor on the night of February 17, 2018, as an exhibit while Taylor was on the stand; in the message, Victim stated that Defendant had physically and sexually assaulted her. Neither party disputes whether the text message fit the definition of hearsay. *See* Rule 11-801(C) NMRA (defining hearsay); *State v. Leyba*, 2012-NMSC-037, ¶ 10, 298 P.3d 1215 (same). However, the State argues that the text message was properly admitted because it satisfied the requirements for two hearsay exceptions—excited utterance, Rule 11-803(2) NMRA, and present sense impression, Rule 11-803(1). Defendant asserts that the State failed to lay a proper foundation for these exceptions. The admission of the text message is an evidentiary ruling that we review for abuse of discretion. *State v. Suazo*, 2017-NMSC-011, ¶ 9, 390 P.3d 674. Finding none, we affirm.

**{20}** On the first day of trial, the State told the district court that Victim would be called first, and Taylor would be called second. Taylor was in custody when trial began, having been arrested pursuant to a material witness warrant and brought before the court on the first day of trial. The court stated multiple times that Taylor would not be held beyond the end of the day. Pretrial motions, voir dire, and opening statements took up most of the day and the State did not begin presenting its case in chief until nearly four

o'clock in the afternoon. Presumably out of concern that Taylor would not appear the next day, the State called Taylor as its first witness. When the State sought to admit the text message through Taylor, Defendant objected, and during the ensuring bench conference the State told the court that Victim would be called the next day and foundation would be laid at that time.

**{21}** Indeed, during the following day of trial, the State called Victim to the stand and established that Victim sent the message to Taylor right after the incident and told her what had happened. Victim further testified that during the assault, Defendant threw Victim's phone across the room, and that Victim sent the text message as soon as she was able to regain control of the phone. Victim's testimony provided the foundation necessary to admit the text message under the State's proffered hearsay exceptions.

**{22}** Under similar circumstances, this Court has held that "no foundational error occurred by allowing the testimony of . . . two witnesses to be presented out of sequence." *State v. Garnenez*, 2015-NMCA-022, ¶ 32, 344 P.3d 1054. In light of the circumstances here, we do not view the district court's decision as untenable or unjustified by reason, *see State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829, and we accordingly conclude that the district court did not abuse its discretion in admitting the text message.

## IV. Competency Determination

**{23}** On the second day of trial, Defendant appeared in court in his prison jumpsuit. Defendant stated that he did not want to change into clothes provided by his attorneys. When the district court asked him why, Defendant stated that it was God's decision that he remain in the jumpsuit. The court informed Defendant that he could change into different clothing, but Defendant declined. After a brief recess, defense counsel informed the court that Defendant had not taken his medication that day and may have been experiencing mental health issues. Defense counsel raised competency, saying, "I think it's a jury issue." The district court found that there was nothing to indicate that competency was at issue and allowed the trial to proceed. Defendant contends that the district court deprived him of due process by failing to pause the proceedings, permit defense counsel to inform the court of counsel's concerns, review the evidence, and make a determination on the record whether defense counsel had established reasonable doubt that Defendant may not be competent to stand trial. We disagree.

**{24}** The record demonstrates that the district court freely allowed Defendant to raise competency as an issue and to make a record regarding counsel's concerns. Once competency was raised, the district court was required to determine whether Defendant had presented sufficient evidence to raise a reasonable doubt as to his competency. *See State v. Flores*, 2005-NMCA-135, ¶ 17, 138 N.M. 636, 124 P.3d 1175 (stating that if the court finds that the defendant has produced evidence that creates a reasonable doubt as to the defendant's competence, the proceedings must be halted and the defendant must be evaluated by a qualified professional). After giving the prosecutor an opportunity to respond, the district court ruled on the matter, noting that Defendant had

actively participated in voir dire and engaged with his attorneys the day before. The court then ruled that there was no evidence establishing that competency was an issue less than twenty-four hours later. Defendant has not challenged the district court's substantive ruling and we see nothing in the record indicating that this ruling was clearly contrary to the facts or circumstances of this case. We hold that the district court did not err in denying the Defendant's request to halt the trial in order to undergo a formal competency proceeding.

**CONCLUSION**

**{25}** For the foregoing reasons, Defendant's convictions are affirmed.

**{26}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**SHAMMARA H. HENDERSON, Judge**