This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41466**

**EDWIN WILSON,**

Plaintiff-Appellant,

v.

**CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**George Eichwald, District Court Judge**

Bruce Thompson Law Firm, P.C.
Bruce E. Thompson
Albuquerque, NM

Romero, Harada & Winters, LLC
Geoffrey R. Romero
Albuquerque, NM

Bencoe & LaCour Law, P.C.
Lori M. Bencoe
Cherie LaCour
Danielle Ceballes
Albuquerque, NM

for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Tim L. Fields
Jeremy K. Harrison
Elizabeth A. Martinez
Tessa L. Chrisman
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**     This appeal revolves around two issues: first, whether Defendant Cincinnati Specialty Underwriters Insurance Company, an insurer, committed bad faith by breaching the duty to defend or duty to settle owed its insured, the Improved Benevolent and Protective Order Elks of the World Albuquerque Navajo Lodge #863 (the Lodge); and second, whether an insurance policy held by the Lodge covered Plaintiff Edwin Wilson[1] for injuries sustained at the Lodge. The underlying lawsuit against the Lodge was brought by Plaintiff, who suffered a catastrophic injury from a 2015 shooting there. Because the record establishes that Plaintiff's injuries were excluded from the policy, we affirm the district court's granting of Defendant's summary judgment motion as to lack of coverage and its ensuing dismissal of Plaintiff's remaining claims.

## BACKGROUND

**{2}**     This Court has addressed other issues in this case in a previous appeal. *See Wilson v. Berger Briggs Real Est. & Ins., Inc.*, 2021-NMCA-054, 497 P.3d 654. Our holding in *Wilson* allowed the Lodge to assign its commercial claims to Plaintiff, enabling him to bring the current appeal against Defendant. *Id.* ¶¶ 14, 21. We incorporate the facts as recounted in *Wilson* and include additional facts as relevant to this appeal. *See id.*

**{3}**     On June 3, 2015, Defendant received a settlement demand—specifically a policy-limits offer with a twenty-one-day deadline—from Plaintiff with Plaintiff's complaint against the Lodge attached. That same day, Defendant reviewed the Lodge's "shooting coverage" and told Plaintiff over the phone that there was no coverage for the event alleged in Plaintiff's complaint. On June 10, the Lodge informed Defendant that Plaintiff had served his complaint to the Lodge on June 8. The Lodge told Defendant several times that it could not afford a lawyer and sought representation from Defendant. Defendant contacted a lawyer to represent the Lodge on July 7, and that lawyer entered an appearance the next day. The lawyer answered the complaint and filed several responses to discovery requests. Defendants thereafter sought a declaratory judgment in federal district court stating that it did not have a duty to defend the Lodge against the alleged harms. The federal district court so found and ordered default judgment against the Lodge on November 23, 2015. Insisting that there was no coverage, Defendant's lawyer then withdrew from the district court[2] case that serves as the basis for this appeal. The Lodge assigned its rights to Plaintiff in February 2016. Following a

---

1A notice of suggestion of death was filed during the pendency of this appeal (November 10, 2024) indicating that Plaintiff Edwin Wilson passed away on October 26, 2024.
2Unless preceded by "federal," "district court" refers to state district court in this opinion.

damages trial in August 2016, at which the Lodge was unrepresented, the district court entered a judgment in favor of Plaintiff in excess of $14 million.

{4}     Plaintiff filed a separate lawsuit against Defendant in January 2017, alleging various claims of negligence and breaches of duties. Notably, this complaint did not contain any claims related to the duty to defend, the duty to settle, or bad faith. Years of litigation and myriad motions later, the district court set the case for trial and included a deadline for filing motions to amend pleadings. Nearly seven months after this deadline passed and two months before the trial was set to begin, Plaintiff filed a motion for leave to file an amended complaint, with an amended complaint attached. The district court set a hearing for Plaintiff's motion for leave to file an amended complaint, Defendant's motion for summary judgment due to lack of coverage, and various other motions. At the hearing, the district court primarily heard argument on Defendant's motion to dismiss due to lack of coverage, and Plaintiff did not request to argue or obtain a ruling on his motion for leave to file an amended complaint. The district court granted Defendant's motion for summary judgment on coverage in August 2023, finding that the Lodge's insurance policy with Defendant excluded the injuries suffered by Plaintiff and that such a finding was dispositive of all other claims. This appeal followed.

## DISCUSSION

{5}     "We review [a] district court's grant of summary judgment de novo." *Dove v. State Farm Fire & Cas. Co.*, 2017-NMCA-051, ¶ 10, 399 P.3d 400. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law[,]" with "[a]ll reasonable inferences . . . construed in favor of the non[]moving party." *Id.* (internal quotation marks and citations omitted). "Furthermore, the interpretation of an insurance contract is a matter of law, which we review de novo." *Id.* (internal quotation marks and citation omitted).

{6}     On appeal, Plaintiff primarily argues various claims related to bad faith, particularly, Defendant's duty to defend and the duty to settle. Next, Plaintiff claims the district court erred in finding in favor of Defendant on the coverage issue. We address each argument in turn.

## I.     Bad Faith

{7}     Plaintiff attempts to argue that Defendant breached both a duty to defend and a duty to settle and that these actions are evidence of bad faith. Plaintiff goes on to argue that the district court should have first addressed bad faith before coverage. According to Plaintiff, by addressing coverage claims first and neglecting to reach bad faith claims once no coverage was found, the district court "put the cart before the horse." Plaintiff relies on case law establishing that bad faith claims are "separate and independent" from coverage claims and thus cannot be dismissed by the lack of coverage.

{8}     However, Plaintiff's complaint made no mention of bad faith claims. Plaintiff did file a motion for leave to file an amended complaint—seven months after the district

court's deadline for amended filings. Plaintiff only then included bad faith claims in the amended complaint and attached the amended complaint to his motion. The district court set a motion hearing, but since a "substantial stack" of other motions were also before the district court, it addressed others first, focusing primarily on Defendant's motion for summary judgment for lack of coverage. Still, at the hearing, Plaintiff neglected to raise his motion for leave to file an amended complaint, request a ruling thereon, or even mention the existence of bad faith or bad faith claims. Nor did the district court grant Plaintiff's motion for leave to file an amended complaint, vocally or in its later order, meaning that Plaintiff's amended complaint was neither approved nor responded to by Defendant.

**{9}** This circumstance arose in *Stinson v. Berry*, in which the plaintiff asserted negligence claims in his complaint but then argued additional claims, claims about duty and liability, at a hearing on the defendant's motion for summary judgment. *See* 1997-NMCA-076, ¶ 7, 123 N.M. 482, 943 P.2d 129. In its order, issued after the hearing and after the plaintiff filed a motion to amend his complaint to include the additional claims, the district court granted the motion for summary judgment but did not directly rule on the plaintiff's motion to amend his complaint. *Id.* ¶ 8. Nonetheless, this Court deemed the plaintiff's motion to file an amended complaint "to have been implicitly denied" by the district court and held such a denial proper. *Id.* "Where there has been no formal expression concerning a motion, a ruling can be implied by entry of final judgment or by entry of an order inconsistent with the granting of the relief sought." *Id.*

**{10}** Here, Plaintiff filed an untimely motion to amend his complaint at the dawn of trial and seven months after the deadline for doing so had passed; he, unlike the plaintiff in *Stinson*, did not argue any bad faith claims at the hearing or request a ruling either on bad faith claims themselves or on his motion to file an amended complaint that included such claims. Therefore, in line with our ruling in *Stinson*, we hold that the district court's granting of Defendant's motion for summary judgment effectively equates to a denial of Plaintiff's motion for leave to file an amended complaint, even absent a direct ruling on the matter. *See State v. Herrera*, 2001-NMCA-073, ¶ 30, 131 N.M. 22, 33 P.3d 22 (holding the same related to a criminal defendant's motion for a competency evaluation). Additionally, we point out that "[a]mendments to pleadings are favored and should be allowed when justice so requires. [This Court] will reverse the denial of a motion to amend, however, only upon a showing of clear abuse of discretion." *Stinson*, 1997-NMCA-076, ¶ 9. Plaintiff neither argued that the district court abused its discretion in its effectual denial of Plaintiff's motion for leave to amend his complaint nor made such a showing here, and we likewise find none. *Id.*

**{11}** We acknowledge that bad faith claims can exist separate from coverage, meaning that even when there is a lack of coverage, a plaintiff may still have a viable claim for bad faith. *See Haygood v. United Servs. Auto. Ass'n*, 2019-NMCA-074, ¶ 22, 453 P.3d 1235 ("[A] bad faith claim need not depend on the existence of coverage."); *see also O'Neel v. USAA Ins. Co.*, 2002-NMCA-028, ¶ 9, 131 N.M. 630, 41 P.3d 356 (A "record [may contain] evidence to support a finding of bad faith against [an insurer] based on conduct separate from [the insurer's] refusal to pay."). Here, it is true that

Plaintiff presented "other causes of action [of bad faith] against [Defendant] [that are] are separate and independent from the coverage issue the [d]istrict [c]ourt decided." But because these claims did not appear in the complaint, and because the district court neither granted Plaintiff's motion for leave to file an amended complaint nor issued any direct ruling on the merits of the bad faith claims, Plaintiff is unable to bring those claims on appeal.

## II.  Coverage

{12}  Although Plaintiff frames his coverage argument largely in terms of its relationship to the duty to defend—a claim absent from his complaint and thus ineligible in this appeal—we nonetheless must address Plaintiff's remaining, properly raised coverage arguments. Specifically, Plaintiff asserts that there was "clearly coverage for at least some of the claims [in the complaint], if not all," and that genuine disputes of material fact required the district court to submit the case to a jury rather than decide it on summary judgment. Defendant maintains that the policy's language was unambiguous and excluded coverage for Plaintiff's claims. We agree with Defendant and explain.

{13}  The claims for ordinary negligence in the Lodge's operation of its premises that appeared in the underlying complaint are as follows:

a.  failing to adopt and implement reasonable rules or regulations for controlling patrons of the business;

b.  failing to adopt and implement reasonable rules or regulations for removing unruly, intoxicated or argumentative patrons of the business;

c.  failing to adopt and implement reasonable rules or regulations to keep the premises safe for patrons of the business, including Plaintiff;

d.  failing to adopt and implement reasonable rules or regulations to protect patrons of the business, including Plaintiff, from injury by other patrons of the business;

e.  failing to supervise its employees, agents or servants in the implementation and enforcement of these [potential] rules or regulations;

f.  failing to hire qualified employees, agents or servants to enforce these rules or regulations;

g.      failing to properly train its employees, agents or servants in the control of unruly, intoxicated or argumentative patrons of the business;

h.      failing to terminate its employees, agents or servants unfit or unqualified to perform their necessary job duties;

i.      failing to provide adequate security to protect patrons of the business, including Plaintiff, from injury by other patrons of the business;

j.      failing to take appropriate action to protect patrons of the business, including Plaintiff, from injury by other patrons of the business;

k.      failing to safely and properly remove unruly, intoxicated or argumentative patrons of the business in a manner to prevent injury to other patrons of the business, including Plaintiff;

l.      removing unruly, intoxicated, or argumentative patrons of the business in such a manner as to cause injury to other patrons of the business, including Plaintiff.

Included in the assault or battery exclusion of the insurance policy, however, is language that the

insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of . . . the failure of any insured . . . to prevent or suppress assault or battery . . . or provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery . . . or the negligent [e]mployment . . . [s]upervision, [t]raining, or [r]etention . . . of a person for whom any insured is or ever was legally responsible.

**{14}**   Comparing the allegations in the underlying complaint with the exclusions in the insurance policy between Defendant and the Lodge convinces us that there was indeed no coverage for Plaintiff's claims. For example, Plaintiff's claims that Defendant failed to "adopt and implement reasonable rules or regulations for controlling patrons" or to "keep the premises safe" seem to be directly negated by language in the policy excepting Defendant from the requirement to "provide an environment safe from assault or battery." Even more convincing, however, is the nearly verbatim relationship between Plaintiff's claim for "failing to provide adequate security" and the exception that "insurance does not apply to . . . failure to provide adequate security." As a final example, Plaintiff's claim for failure to "hire qualified employees," "properly train . . . employees," or "terminate" unqualified employees is excepted by language regarding "the negligent [e]mployment . . . [s]upervision, [t]raining, or [r]etention" of employees.

**{15}** We, like the district court, see no potential for coverage for Plaintiff's claims in light of these exclusions. We also note that even if the duty to defend argument *had* been properly raised, the indisputable lack of coverage would have dissolved the duty to defend nevertheless. *See Guar. Nat'l Ins. Co. v. C de Baca*, 1995-NMCA-130, ¶ 14, 120 N.M. 806, 907 P.2d 210 ("[W]hen an insured is sued, the insurer has no duty to defend if the allegations in the complaint clearly fall outside the policy's provisions."); *see also Dove*, 2017-NMCA-051, ¶ 11 (holding that only facts that fall "*potentially* within the coverage of the policy" trigger the duty to defend (emphasis added)).

**CONCLUSION**

**{16}** We therefore hold that the district court was correct in its coverage decision and in its finding that such a decision was dispositive of Plaintiff's remaining claims. We affirm.

**{17}   IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**GERALD E. BACA, Judge**